Foster *v.* Phaley et al.

ELIHU S. FOSTER *v.* JOHN PHALEY AND ALVA BUTTON.

*Promissory Note.    Failure of Consideration.    Contract.*

The defendant purchased certain premises and gave the promissory note in suit to the grantor in part payment therefor. He entered into possession and occupied the premises for two years. The use of the premises was worth more than the amount of the note, but during his occupation the defendant expended as much in repairs as the value of the use of the premises. His grantor's title having entirely failed, the defendant sought to defend an action upon the promissory note upon the ground of failure of consideration. *Held,* that to establish this defence it must appear that the repairs made by the defendant were necessary in order to render the use of the premises of any value.

*Held,* also, that the fact that the defendant continued to occupy the premises during the pendency of the controversy which finally resulted in establishing the defect of his grantor's title, without offering to rescind his contract of purchase of the premises, was no waiver of his right afterwards to insist upon a failure of consideration as a defence to the promissory note given for such purchase.

ASSUMPSIT upon a promissory note signed by the defendant Phaley, as principal, and by the defendant, Button, as surety, dated April 8th, 1857, for one hundred and fifty-two dollars, payable to John Lougee, or order, in thirty days from date, and interest annually. Plea, the general issue and trial by jury at the January term, 1860, BARRETT, J., presiding.

It appeared in evidence that the note in suit was, with others of the same date, executed by the defendant to Longee, for a saw mill and appurtenances in Tunbridge. And that it was transferred by indorsement from Longee to Foster on the 21st of May, 1857, and that the plaintiff paid a full consideration for the note.

It further appeared that on the 15th day of March, 1854, Daniel Kelsey executed to Daniel Tarbell, Jr., a note for $2466.98 payable to Tarbell on demand, and, to secure the payment thereof, also executed to Tarbell a mortgage of said saw mill; that in the April following Tarbell transferred said note to Keith, Hyde & Co., as collateral security for a demand of $750, which Tarbell was then owing them; that during the summer of 1854, that sum was reduced by payments made by Tarbell to

$139.00; that while this note was in the hands of Keith, I yde, & Co., Solomon Downer commenced a suit against Tarbell and therein summoned Kelsey, as Tarbell's trustee; that soon aftar said process was served upon Kelsey, Tarbell, without payment of the balance of $139.00, obtained possession of the note from Keith, Hyde & Co., without their consent, and sold and trans- ferred said note to Longee for a full consideration; that Tarbell then as signed to Longee the mortgage executed by Kelsey, upon the mill; that Longee afterwards commenced a suit in chancery to foreclose the mortgage; that at the January term, 1860 of the Orange County Court of Chancery, a final decree of foreclosure was rendered therein in favor of Longee, against Kelsey; and that this decree expired without redemption in February, 1857; and that thereupon Longee took out a writ of possession, and on the 7th of April, 1857, was put into possession of the mill; that on the 8th of April, 1857, Longee deeded the saw mill to the defendant Phaley, and took therefor certain notes, and among others the note now in suit.

It further appeared that Kelsey appeared before a commissioner on the 27th of August, 1855, and from the disclosure and proofs given, the commissioner decided that Kelsey was the trustee of Tarbell to the amount of said note, deducting some payments made by Kelsey to Tarbell, unless Messrs. Keith, Hyde & Co., and Longee, or either of them, upon the facts found by said commissioner, might rightfully claim the avails of said note; that Keith, Hyde & Co. perfected their claim to the note for the balance due them, and that Longee was duly cited by the county court in which Downer's suit was pending, to appear as claimant in that suit of the effects in Kelsey's hands; that Longee appeared and contested his claim; that the suit was tried between Downer as plaintiff, and Longee as claimant; and that it finally resulted at the February Term of the supreme court for Windsor County, 1859, in the recovery by Downer of a judgment against Kelsey as trustee, and a judgment against the claim of Longee.

It further appeared by the testimony of Phaley that he had commenced a suit against Longee, which was still pending, upon the covenants in his deed on the sale of the saw mill to recover damage for the failure of the title.

It further appeared that Phaley went into the occupancy of the saw mill at the time of the purchase, and held possession of the same under his contract of purchase with Longee till March, 1859, when he was notified to pay rent thereafter to Downer; and that Downer's claim was known to Phaley in the early part of the summer of 1857, and before the commencement of the present suit.

It also appeared that during the first year that Phaley occupied the mill under his contract with Longee, he expended about one hundred dollars in planking the dam, and other repairs, and that in the summer of 1858 he took out the old work in the mill and put in two new water wheels, at an expense of about $170, and a balance wheel of about $30; and that the use of the mill per annum was worth about $210.

There was no testimony that Phaley had ever offered to give up the trade, or to deed the premises back to Longee, or to give up the possession of them to him, or to the plaintiff.

The plaintiff claimed and requested the court to charge the jury that the defendant could not avoid the contract, on the ground of a partial failure of consideration; and that if the defendant had the use and occupancy of the mill during the time he held under his contract with Longee, and thereby received the beneficial use of the mill, that constituted at least a partial consideration; that under the decree, obtained by Longee against Kelsey, the possession of the mill belonged to Longee, and to the defendant under his deed from Longee, and that Downer was not entitled to demand of Longee nor Phaley any rents or profits accruing before the decision of his case in the supreme court as above set forth.

The court substantially so charged. But the court further instructed the jury, that they should take the repairs made upon the mill in connection with the use of the mill, and that if Phaley laid out more in repairs than the use of the mill was worth during the time he occupied under Longee's deed, no benefit resulted to him, and consequently Phaley got nothing by his possession, and there would nothing remain in the hands of Phaley, as part consideration of the purchase; and if so, upon that point their finding should be for the defendant.

To that part of the charge in relation to the repairs upon the mill, and their application towards the use of the mill, the plaintiff excepted.

The plaintiff also requested the court to charge the jury that if the defendant, after his knowledge of Downer's suit against Tarbell, and Kelsey as trustee, and of the claim of Downer to the premises, by virtue of that process, continued to hold and occupy the same, without an offer to rescind, and restore the party deeding to his former situation before the sale, this would be such a ratification of the contract as would bind the defendant to pay the note, notwithstanding any want or failure of the consideration in the note.

The court declined so to charge, but did charge, in substance, that Phaley, having bought the mill, and knowing the fact of Downer's claim, and the contest in relation to it, was entitled to hold on to the mill, without any offer to rescind, to await the result of litigation between Downer and Longee; and that Phaley, until that decision was had, had the right to withhold payment of the note, without any such offer. To the refusal to charge upon this point as requested, and to the charge as given, the plaintiff excepted.

*A. M. Dickey*, for the plaintiff.

*C. B. Leslie*, for the defendant.

PIERPOINT, J.   The note upon which this suit was brought, was given by the defendant to John Longee for a part of the purchase money agreed to be paid by the defendant Phaley to Longee, for a saw mill and the appurtenances, which Phaley had bought of Longee. The note was endorsed to the plaintiff after it fell due, and the defence now set up is, that there was a failure of the consideration.

It appears from the case that in March, 1854, one Daniel Kelsey owned the saw mill in question, and, while owning the same, mortgaged it, together with a farm in Tunbridge, to Daniel Tarbell, Jr, to secure the payment of a note for $2,466.98. This note Tarbell afterwards transferred to Keith, Hyde & Co.,

Foster *v.* Phaley et al.

as collateral security for a debt he owed them, which debt he subsequently reduced by payments, to the sum of $139. Tarbell did not assign or deliver the mortgage to Keith, Hyde & Co. In the meantime Solomon Downer sued Tarbell on a note for $5000, and trusteed Kelsey as Tarbell's debtor. Soon after this Tarbell, by some means, got possession of Kelsey's note without in any way discharging Keith, Hyde & Co.'s lien thereon for the . $139. This note he sold and transferred to Longee, and also assigned to him the mortgage executed by Kelsey to secure its payment. By this transfer Longee acquired all of Tarbell's interest in the note and mortgage. This interest was subject to Keith, Hyde & Co.'s lien upon the note as collateral security for the $139, and to such rights as Downer acquired by virtue of his proceedings against Tarbell and his trustee Kelsey. What would be the result of that proceeding of course could not then be known. It was a matter of litigation between the parties. Downer might fail in establishing his ·claim, or he might obtain a judgment against Kelsey for the whole amount of the debt due to Tarbell over the $139. After Longee had purchased the note and mortgage he commenced proceedings in chancery against Kelsey to foreclose his equity of redemption in the mortgaged premises. It does not appear that Kelsey, who was of course aware of these claims upon the debt due from him to Tarbell, made any attempt to resist such proceedings in chancery, or if he did, it was of no avail, for Longee obtained a decree against him which finally became absolute, and on the 7th of April 1857, he was, by virtue of a writ for that purpose, put into the possession of the mortgaged premises. This decree is still in full force. The legal effect of that decree was to vest in Longee Kelsey's right of redemption. It is true Tarbell got the note from Keith, Hyde & Co. surreptitiously, still they only had an interest in it to the amount of $139. The balance belonged to Tarbell as against them, and whether the note was in Keith, Hyde & Co.'s or Tarbell's possession, would not affect their respective interests in it, nor prevent Tarbell's selling and transferring such interest as he had in it. Downer's claim was wholly uncertain and contingent, depending upon the result of his suit, and as against him Tarbell was entitled to the possession of the note. The

mortgage he had not assigned. He clearly had such an interest in this note and mortgage, that he could proceed against Kelsey to foreclose the right of redemption, and if so, the assignment to Longee gave him the same right.

Longee having obtained a decree against Kelsey and possession, under it, such decree is conclusive while it remains in force: whether circumstances might not arise out of the various transactions that would justify a chancellor, on proper application, in vacating that claim, is a question we are not now called upon to decide.

Immediately after Longee had taken the possession under his decree, he sold the mill to the defendant Phaley, and took therefor, among other notes, the note now in suit. Longee's deed to Phaley contained the usual covenants of warranty and seizin, and Phaley immediately took possession of the premises and continued in possession until March, 1859, a period of nearly two years. Under the circumstances, he had an undoubted right to the possession for this period without being liable to any one for the rents and profits, as neither Keith, Hyde & Co., nor Downer had so perfected their rights as to stand in any position to question his right. The use of the mill is found to be worth $210 per year. No question seems to have been made in the county court as to the effect of the covenants of warranty in Longee's deed to Phaley, or of the fact that Phaley commenced a suit thereon before the commencement of this suit, upon the question of a consideration for the notes, or of a ratification of the contract: and therefore, of course, no such question can now be raised here ; but the only questions for our consideration arise upon the charge of the court in answer to the requests of the plaintiff. The plaintiff requested the court to charge the jury " that the defendant could not avoid the contract on the ground of a *partial* want, or failure of consideration, and if the defendant had the use and occupancy of the mill during the time he held it under his contract with Longee, and thereby received the beneficial use of the mill, that constituted at least a partial consideration ; that, under the decree obtained by Longee against Kelsey, the possession of the mill belonged to Longee and to the defendant under his deed, and that Downer was not entitled to demand of

Foster *v.* Phaley et al.

Longee or Phaley any rents or profits accruing before the decision of his case in the supreme court as above set forth."

With this request the court substantially complied, but further said to the jury " that they should take the repairs made upon the mill in connection with the use of the mill; and that if Phaley laid out more in repairs than the use of the mill was worth during the time he occupied under Longee, no benefit resulted to him, and consequently Phaley got nothing by his possession, and there would nothing remain in the hands of Phaley as part consideration of the purchase ; and if so, upon that point their finding should be for the defendant." It is insisted on the part of the plaintiff, that in respect to this part of the charge there was error. It appears that while Phaley occupied the mill, he expended about one hundred dollars upon the dam, took out the old wheel and put in two new cast-iron Buxton water wheels, and a balance wheel, at an expense of about two hundred dollars. Now if it was necessary that Phaley should make these repairs and improvements in order to obtain the beneficial use of the mill, and they were necessary to be made, to render the use of the mill of any substantial value, then the charge of the court was correct, and it was probably in this view that these instructions were given to the jury. But there is nothing in the language used that would indicate to the jury, that they were to regard it in that light, neither is there any evidence referred to in the case to show that the jury would probably so regard it, with reference to such evidence ; in short there is nothing in the case to show that the repairs and improvements were necessary, or that they really increased the value of the use of the mill during the period that Phaley occupied it.

As the case stands, Phaley had the beneficial use of the mill to the extent of about four hundred dollars, and to that extent at least it cannot be said that there was a failure of consideration for the notes, and, as the principle is well settled in this state, that a partial failure of consideration cannot be set up as a defence, the plaintiff was entitled to a verdict so far as this point is concerned, unless the fact that he had expended an equal amount in repairs upon the premises under the circumstances in which they were made in this case, is a sufficient answer to that position.

As has been already said, if the expenditure in repairs was necessary to render the use of the premises of value, so that in fact it cost Phaley to keep the premises in repair, so that the mill could be beneficially used, all that could be realized therefrom, then he has received nothing that can be called a partial consideration for the notes. This is but another mode of stating the proposition that the use of the premises was worth nothing. But, on the other hand, if the repairs were not necessary to be made in order that the defendant, Phaley, could realize the benefits of the use of the premises, as may have been the case from the facts stated, but such repairs were made as permanent improvements, with a view to ultimate benefits to be derived therefrom, and not with reference to any present necessity; in such case we think the money so expended should not be set against the use of the premises so as to destroy its effect as a part consideration for the notes, and establish the fact that the use of the premises was of no value, especially as these repairs were made after he was fully aware of Downer's claim.

In this view of the case we think the charge of the court was erroneous. The jury should not only have been required to find that a sum had been expended in repairs equal to the use of the premises, but also that the repairs were necessary to make such use valuable, in order to warrant them in finding a verdict for the defendant on this point.

In respect to the other point on which the court was requested to charge the jury, we think the charge of the court was entirely correct in asserting that Phaley had the right to hold the premises until the question of Downer's right was settled without prejudicing his right to rescind the contract. Downer, and Keith, Hyde & Co. might fail in establishing their claim. Neither had any direct lien upon the land, and, for aught Phaley knew, might never succeed in establishing one. Under the circumstances of this case, his retaining the possession cannot be regarded as an affirmance of the contract.

Judgment reversed and case remanded.